**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Octavio Salgado,

    Plaintiff

    v.

Brian Williams, et al.,

    Defendants

Case No. 2:13-cv-00220-JAD-PAL

**Order Granting Motion for Summary Judgment [Doc. 20]**

Pro se prisoner plaintiff Octavio Salgado claims that he suffers from headaches and vertigo that led to what he calls several "man-down" incidents during his incarceration in the Nevada Department of Corrections ("NDOC").[1] Salgado contends that NDOC staff were deliberately indifferent to his serious medical needs, and that they violated his due-process rights by baselessly accusing him of faking medical episodes so that he could transfer to an outside hospital—an accusation that he believes caused him a parole denial.[2]

The defendants move for summary judgment on Salgado's § 1983 claims,[3] arguing that several of them did not personally participate in the alleged conduct, that Salgado received the

---

[1] Doc. 4 at 5–6.

[2] *Id.* at 4–10.  The Prison Litigation Reform Act screening of Salgado's amended complaint left him with two claims.  The first claim is an Eighth Amendment deliberate-indifference-to-medical-needs claim against Drs. Aranas and Sanchez, Chief Medical Officer Bannister, Director of Nursing Services Dressler, and medical staff member Gutierrez.  Doc. 5 at 5.  The second claim is a Fourteenth Amendment procedural-due-process claim against Sgt. T. Carlman and nurse John Daglione.  *Id.* at 7.

[3] Doc. 20.

1

1 necessary medical care and all process due in his grievance process, and that each of them enjoys
2 qualified immunity from this suit. Because the record establishes that NDOC staff was not
3 deliberately indifferent to Salgado's medical needs and afforded him due process in his disciplinary
4 proceeding, I grant summary judgment.[4]

**Discussion**

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[5] When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[6] If reasonable minds could differ on material facts, summary judgment is inappropriate because summary judgment's purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[7]

If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[8] The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; he "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in his favor.[9] The court only considers

---

[4] I find this motion appropriate for resolution without oral argument. L.R. 78-2.

Salgado was timely provided with the notice required under *Rand v. Rowland,* 154 F.3d 952 (9th Cir. 1998) (en banc), *Wyatt v. Terhune,* 315 F.3d 1108 (9th Cir. 2003), and *Klingele v. Eikenberry,* 849 F.2d 409 (9th Cir. 1988). Doc. 24. I liberally construe all of his pro se motions and pleadings. *See Bernhardt v. L.A. Cnty.*, 339 F.3d 920, 925 (9th Cir. 2003).

[5] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[6] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[7] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex,* 477 U.S. at 323.

[9] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson,* 477 U.S. at 248–49.

properly authenticated, admissible evidence in deciding a motion for summary judgment.[10]

**A.     Deliberate Indifference to Medical Needs**

The Eighth Amendment prohibition against cruel and unusual punishment "embodies broad idealistic concepts of dignity, civilized standards, humanity, and decency."[11] A prisoner who claims inadequate medical care must show "deliberate indifference to serious medical needs of prisoners" by prison officials.[12] Courts apply a two-part test. First, the objective analysis asks whether the plaintiff has "show[n] a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain."[13] The subjective analysis then asks whether prison officials acted with deliberate indifference to the serious medical needs.[14] The plaintiff can prove this prong by showing the defendants' "purposeful act or failure to respond to a prisoner's pain or possible medical need and . . . harm caused by the indifference."[15]

The deliberate-indifference bar is a high one. "Mere indifference, negligence, or medical

---

[10] Fed. R. Civ. P. 56(c); *Orr*, 285 F.3d at 773–74.

The defendants' exhibits are authenticated by three declarations that are based on personal knowledge and are sworn under penalty of perjury consistent with 28 U.S.C. § 1746. *See* Doc. 20-1 at 4, 7, 51. The defendants also submit a declaration by Dr. Aranas that likewise satisfies Section 1746. *See id.* at 42. Accordingly, all of the defense exhibits are admissible.

I also consider Salgado's amended complaint (Doc. 4) and response brief (Doc. 11) as part of the record because: they contain facts that are based on Salgado's sworn personal knowledge and are admissible in evidence because they are submitted under penalty of perjury. *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995) (citing Fed. R. Civ. P. 56(e)) (citations omitted); Doc. 4 at 13; Doc. 31 at 11.

[11] *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).

[12] *Id.* at 104.

[13] *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)) (internal quotation marks omitted).

[14] *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

[15] *Jett*, 439 F.3d at 1096 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

malpractice will not support this cause of action."[16] If the plaintiff can show that prison officials denied, delayed, or intentionally interfered with medical treatment—and that delay or interference caused further injury—this is enough to establish deliberate indifference.[17] But it is not enough for an inmate to merely disagree with the diagnosis or course of treatment provided to him in prison.[18]

Salgado states that he was in a serious car accident in February 1998 that "resulted in trauma to the brain, blood clots within the brain, and brain surgery to remove said clots."[19] His treating physician advised him that he was at high risk of developing future blood clots and that, if clots went undiagnosed by MRI, the consequences could be as severe as death.[20] Starting in 1998, Salgado suffered dizziness, vertigo, and headaches.[21] Six times between July 2010 and January 2013, or about once every five months, these symptoms caused what Salgado terms "man-down medical episodes" during his incarceration.[22] Salgado filed six medical grievances and repeatedly saw NDOC doctors.[23] He was diagnosed with vertigo, but believes he needs an MRI to check for blood

---

[16] *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)) (internal quotation marks omitted).

[17] *Jett*, 439 F.3d at 1096 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)) (internal quotation marks omitted); *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002) (citing *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989)) ("Plaintiffs could not prove an Eighth Amendment violation because they have not demonstrated that delays occurred to patients with problems so severe that delays would cause significant harm and that Defendants should have known this to be the case").

[18] *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) (citing *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)); *Randall v. Wyrick*, 642 F.2d 304, 308 (8th Cir. 1981)) ("A difference of opinion does not amount to a deliberate indifference to [the plaintiff's] serious medical needs.").

[19] Doc. 4 at 5.

[20] *Id.*

[21] Doc. 22-1 at 2.

[22] *See* Doc. 4 at 6. The complaint was filed on May 2, 2013, not long after the last episode Salgado reports in his complaint. *See id.*

[23] Doc. 20-1 at 15, 41–42.

4

clots.[24]

I first consider whether, objectively speaking, Salgado has established a serious medical need. Taking the facts in the light most favorable to Salgado, I note that his post-car-accident spells have been ongoing since 1998, the man-down incidents appear to have been persistent, the cause was not identified sufficiently to stop his incidents, and his post-accident treating physician warned him that he would need to monitor his symptoms to avoid serious injury or death. On this analysis, I find that Salgado satisfies the serious-medical-need prong of the deliberate-indifference test.

The second prong requires a showing that NDOC officials subjectively, deliberately ignored Salgado's medical needs, resulting in harm. A 12-page history of Salgado's medical treatment in the NDOC shows he received continuous medical attention from the time he entered NDOC facilities in February 2003 to the time the report was created in August 2013, several months after this litigation began.[25] Salgado received five examinations and follow-up appointments with Dr. Aranas, High Desert State Prison's senior physician; he saw Dr. Sanchez at least once or twice.[26] Dr. Aranas testifies that, through the time he examined Salgado, the plaintiff's "objective physical findings were essentially normal. Laboratory results, ECG, P.E., and symptoms all got better with medication. There was no indication that further referral and evaluation was needed at that time."[27] Rather than showing deliberate indifference, the record reflects deliberate attention.

The Eighth Amendment prohibits purposeful indifference to inmates' medical needs; it is not a guarantee of every medical test an inmate desires. While it is understandable that Salgado asks why his symptoms persist, NDOC doctors believe they found the appropriate way to treat his

---

[24] *See* Doc. 4 at 5; Doc. 20-1 at 20; Doc. 22-1 at 2.

[25] *See* Doc. 22-1 at 2–13.

[26] Doc. 20-1 at 15, 41–42. The defendants also submit a declaration that Dr. Sanchez saw a patient approximately seven times. Doc. 20-1 at 4. The declaration appears to contain a typographical error: it states that Dr. Sanchez attended "Inmate Clemons" rather than inmate Salgado. *Id.* Because I construe the facts in the light most favorable to the non-moving party, I accept the references to one or two visits between Dr. Sanchez and Salgado, which Dr. Aranas reports based on his review of Salgado's medical records. *Id.* at 41.

[27] Doc. 22-1 at 42.

symptoms.[28] Contrary to Salgado's arguments, NDOC medical staff was not obligated to "tak[e] every possible preventative and exploratory process[]."[29] The only potentially actionable, purposeful act is the defendants' decision not to refer Salgado for an MRI diagnosis. The record shows, however, that they based the decision on objective medical data. This claim boils down to what Salgado wrote in a grievance: "I don't agree with the findings."[30] And it is well established that an inmate's disagreement with a diagnosis does not give rise to a deliberate-indifference claim.

On his deliberate-indifference claim, Salgado also sues Chief Medical Officer Bannister, Director of Nursing Services Dressler, and medical staff member Gutierrez for denying his medical grievances.[31] Because there is no Eighth Amendment violation in the manner in which Salgado's medical treatment was determined and administered, there is no constitutional infirmity in decisions to deny Salgado's medical grievances over that handling. I therefore grant summary judgment in favor of Dr. Aranas, Dr. Sanchez, Bannister, Dressler, and Gutierrez on the entirety of his deliberate-indifference claim.

**B.   Due Process**

Salgado's second claim is for procedural-due-process violations by defendants Doglione and Carlman.[32] The Fourteenth Amendment prohibits depriving persons, including prison inmates, "of life, liberty, or property without due process of law."[33] Prisoners' due-process rights are restricted, however, "by the nature of the regime to which they have been lawfully committed."[34] In a prison-

---

[28] Doc. 20-1 at 26.

[29] Doc. 31 at 3–4.

[30] Doc. 20-1 at 26.

[31] Doc. 4 at 2–3, 8.

[32] *Id.* at 10.

[33] *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Haines v. Kerner*, 404 U.S. 519 (1972); *Wilwording v. Swenson*, 404 U.S. 249, 92 (1971); *Screws v. United States*, 325 U.S. 91 (1945)).

[34] *Id.* (citing *U.S. Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers*, 413 U.S. 548, 93 (1973); *Broadrick v. Oklahoma*, 413 U.S. 601(1973); *Parker v. Levy*, 417 U.S. 733 (1974); *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)) ("Prison disciplinary proceedings are not part of a

disciplinary proceeding, officials must provide the inmate with (1) a written statement, at least 24 hours before the hearing, that includes the charges, a description of the evidence, and an explanation of the disciplinary action; (2) an opportunity to present documentary evidence and call witnesses unless the witnesses would interfere with prison security; and (3) legal assistance when appropriate.[35] Due process is satisfied when "some evidence" supports the disciplinary board's decision.[36]

Salgado was brought to the prison infirmary on March 28, 2012, because he "appeared unresponsive."[37] An NDOC charge states that, when staff members stimulated Salgado to check for responsiveness, he "immediately became alert and able to clearly respond."[38] A correctional officer reported that he overheard another inmate coaching Salgado "on what to say, what to do and how to act to get to the hospital outside."[39] Some time after NDOC nurse Doglione confronted Salgado about this alleged attempted escape, Salgado reported that he felt much better and that he wished to return to his prison unit.[40] Dogloine subsequently charged Salgado with escape.[41]

The escape charge was reduced to a false-or-misleading-statements charge at the March 12, 2012, disciplinary hearing, which Carlman conducted.[42] Salgado claims his punishment was 20 days in segregation and argues that his parole was denied because he "went to the [parole] board while in

---

criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply.").

[35] *See id.* at 563–68, 577–80 (discussing *Johnson v. Avery*, 393 U.S. 483 (1969)) (citations omitted).

[36] *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985).

[37] Doc. 20-1 at 33.

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42] Doc. 4 at 10.

disciplinary segregation."[43]

Salgado's due-process claim suffers from a basic causation problem: his parole progress report does not reflect either the escape charge or the misleading-statement charge, and there is no evidence whatsoever that the parole board considered his disciplinary segregation when denying parole.[44] Instead, the report reflects that Salgado "has no major violations in the last 12 months leading up to the month of parole hearing."[45] His caseworker's statement indicates that "[a]lthough [Salgado] does have a significant disciplinary history, the frequency and numbers of disciplinary violations are decreasing [in] occurrence and severity. The last major write-up was over 3 years ago for an MJ53 (prison made alcohol) violation on 03/09/09."[46] By providing this evidence, the defendants shifted the burden of proof to Salgado, who offers only speculation in claiming that his medically related discipline had anything to do with the parole denial. Because Salgado fails to carry his burden to demonstrate a genuine issue of material fact, summary judgment on his due-process claim against Doglione and Carlman is now required.

To the extent that Salgado objects to the hearsay evidence in Doglione's charges, his due-process claim also fails because he has no right to non-hearsay evidence in a prison disciplinary proceeding.[47] The Constitution only requires "some evidence."[48] Dogloine's charges did contain some evidence that Salgado made false or misleading statements when Salgado "claimed a variety of medical complaint[]s."[49] In addition, Salgado was served with a notice of the escape charge on

---

[43] *Id.*; Doc. 20-1 at 35.

[44] *Id.* at 44–48.

[45] *Id.* at 46.

[46] *Id.* at 44.

[47] *Walpole*, 472 U.S. at 455 ("We hold that the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits.").

[48] *Id.* (citation omitted) ("Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances.").

[49] Doc. 20-1 at 33.

March 28, 2012, the report was read aloud to him, he was informed that he could call a witness, he declined to call any, and he was advised of his potential liabilities and his right to appeal.[50] Because Salgado stated that he wished to make a statement, he was allowed to make one in a taped interview.[51] On this record, I find no due-process violation against Salgado by either Doglione or Carlman. Summary judgment on his due-process claim is thus appropriate on these grounds, too.

**C.    Qualified Immunity**

Because the defendants did not violate Salgado's rights, the defendants have no liability for which they could receive immunity. Thus, I do not reach their qualified-immunity arguments.[52]

## Conclusion

Accordingly, with good cause appearing and no reason for delay,

It is hereby ORDERED, ADJUDGED, and DECREED that defendants' Motion for Summary Judgment **[Doc. 20] is GRANTED.  Judgment is entered in favor of the defendants and against plaintiff Octavio Salgado on all claims.**

The Clerk of Court is instructed to **CLOSE** this case.

DATED March 26, 2015.

_____
Jennifer A. Dorsey
United States District Judge

---

[50] *Id.* at 35.

[51] *Id.*

[52] Doc. 20 at 13–14.